IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE E. CUNNINGHAM, | No. C 10-4313 LB |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | [ECF Nos. 11, 12] |
| Defendant. | |

## INTRODUCTION

Plaintiff Christine Cunningham moves for summary judgment against the acting Commissioner of Social Security, seeking judicial review of the Commissioner's final decision denying her claims for supplemental social security income and disability insurance benefits. *See* Pl.'s Motion, ECF No. 11.[1] The Administrative Law Judge ("ALJ") found that, although Ms. Cunningham had severe impairments, she could still perform a significant number of jobs in light of her residual functional capacity ("RFC") for simple, repetitive, light, and sedentary work that offered the option to sit or stand. AR 13-24. Accordingly, the ALJ concluded that Ms. Cunningham was not disabled under

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 10-04313 LB
ORDER

the Social Security Act. AR 24.

Pursuant to Civil Local Rule 16-5, the matter is deemed submitted for decision by this court without oral argument. All parties have consented to the court's jurisdiction. *See* ECF Nos. 17, 19. For the reasons stated below, the court **GRANTS** Ms. Cunningham's motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment, and **REMANDS** this case to the Social Security Administration for an award of benefits.

## STATEMENT

### I. PROCEDURAL HISTORY

On April 30, 2008, Ms. Cunningham applied for supplemental security income, and then on May 21, 2008, filed for disability insurance benefits. AR 151-58. She alleged a disability with an onset date of May 1, 2007, arising from a combination of conditions including sciatica nerve problems, bulging and thinning discs, arthritis, fibromyalgia, trigeminal neuralgia, restless leg syndrome, interstitial cystitis, degenerative joint disease, and depression. AR 178. Ms. Cunningham's applications were denied initially, AR 66-69, and upon reconsideration, AR 79-81. ALJ K. Kwon held a hearing on Ms. Cunningham's applications at which Ms. Cunningham and a Vocational Expert ("VE") testified. On March 18, 2010, the ALJ issued a decision denying benefits. AR 13-24. On August 4, 2010, the Appeals Council declined Ms. Cunningham's timely request for review, rendering the ALJ's decision the final decision of the Commissioner. AR 1-3. Ms. Cunningham brought this action for judicial review on September 23, 2010. Complaint, ECF No. 1. Pending before the court are the parties' cross-motions for summary judgment. ECF Nos. 11, 12.

### II. SUMMARY OF RECORDS AND ADMINISTRATIVE FINDINGS

This section summarizes (A) the medical evidence in the administrative record from Ms. Cunningham's treating physicians, (B) the opinions of her non-treating physicians, and (C) the ALJ's findings.

**A. Medical Evidence: Treating Physicians**

*1. Dr. Lee Snook - Metropolitan Pain Management (January to August 2008)*

Ms. Cunningham was seen by Dr. Lee Snook approximately twice a month from January to August 2008. His reports summarize her chronic pain issues, which had worsened since 2004. AR

312. Ms. Cunningham suffered from back pain, sciatic nerve pain, fibromyalgia, restless leg syndrome, and chronic interstitial cystitis. Dr. Snook reported that her pain interfered with her activities continuously and was accompanied by anxiety, frustration, and depression. AR 312.

### *2. Dr. Lisa Stearns - Center for Pain and Supportive Care (July 25, 2008)*

Dr. Lisa Stearns examined Ms. Cunningham for her chief complaint of all-over body pain, particularly in the lower back and tailbone. AR 427-433.

### *3. Dr. Michael Loes - Arizona Pain Institute (September - November 2008)*

Dr. Loes's exam notes describe symptoms including a paraspinal spasm, decreased range of motion, ongoing weakness, severe pain, and myalgia. AR 420-424. For the purposes of a fibromyalgia diagnosis, Dr. Loes reported "18/18 tender points positive." AR 424.

### *4. Dr. Michael Wade - Desert Family Medicine (October 2008 - January 2009)*

Physician Assistant Stacie Schaible saw Ms. Cunningham for an acute care visit on October 24, 2008. She reported "[j]ust not feeling right" during recent weeks. AR 495. Dr. Schaible diagnosed arthralgia in connection with swelling and tenderness in Ms. Cunningham's ankle and attributed skin lesions on her face to cellulitis. AR 498.

On January 22, 2009, Dr. Michael Wade had a follow-up visit with Ms. Cunningham. He gave her a vitamin B12 shot to address a diagnosis of fatigue and triaminolone acetonide shots in her right hip and right shoulder to alleviate pain, irritation, inflammation, and tenderness. AR 466. The chart includes exam notes for each major system, including musculoskeleton ("Msk"): "no deformity or scoliosis noted of thoracic or lumbar spine. rt neck and shoulder / rt hip and lower back tenderness. trigger point neck and back." AR 471. In the section of the chart labeled "Impression & Recommendations," twelve "Problems" are listed: hypothyroidism, fatigue, fibromyalgia, hormone disorder, depression, anxiety disorder–generalized, sleep deprivation, back pain–lumbar, hip pain, shoulder pain, and cervical syndrome. AR 471-75.

Ms. Cunningham's chart includes an imaging report from a Lumbar Spine MRI that was completed on February 16, 2009. AR 479. The impressions listed are (1) negative for lumbar disc herniation or significant lumbar stenosis; (2) focal disc degeneration at L5-S1 with bulging and spondylosis without significant stenosis; and bulging/protrusion at T11-T12, with a note to consider

thoracic spine imagine.

On January 22, 2009, Dr. Wade completed a form concerning Ms. Cunningham titled "Medical Opinion re Ability to Do Work-Related Activities (Physical)." AR 460-463. He stated that Ms. Cunningham could lift and carry on either a frequent or occasional basis is less than 10 pounds. AR 460. She could stand and walk less than two hours during an 8-hour day and could sit for less than two hours. *Id.* As a patient who needed to alternate sitting, standing, or walking to relieve discomfort, Ms. Cunningham could, in Dr. Wade's estimation, stand for no more than five minutes and sit for no more than five minutes, and she needed to walk around at least every 15 minutes for five minutes. Ms. Cunningham must be able to lie down during work shifts at least once each hour due to chronic back and leg pain. When asked whether Ms. Cunningham could frequently, occasionally, or never perform various postural activities, Dr. Wade stated she could twist, stoop, and crouch occasionally but never climb stairs or ladders. *Id.*

The report reflects Dr. Wade's opinion that Ms. Cunningham's fibromyalgia, lumbar back pain, and arthralgia affect her ability to reach, handle, and push/pull. AR 462. Dr. Wade indicated that the impairments do not, however, affect her fine manipulation or feeling function. *Id.* Due to Ms. Cunningham's propensity for nerve, back, and hip pain, she must avoid all exposure to extreme cold, extreme hot, and hazards like machinery and heights. *Id.* In addition, she should avoid even moderate exposure to wetness and humidity. *Id.* She need not restrict her exposure to noise or fumes, odors, dusts, gases or the like.

Ms. Cunningham's work-related activities might also be affected by her need to elevate her leg quite frequently and apply ice for a few hours. *Id.* Dr. Wade estimated that Ms. Cunningham's impairments or treatment would cause her to absent from work more than three times a month. AR 463.

### 5. *Dr. Alexis Williams, FNP Lucretia Sonderer - Clinic Ole (April 2009 - February 2010)*

The records include treatment notes for Ms. Cunningham's visits to Clinic Ole on at least nine dates from April through December 2009. *See* AR 552-70. Although the handwritten documents are difficult to read, it appears that she was treated by both Dr. Alexis Williams and FNP Sonderer during this period in 2009. *Id.*

In a letter dated January 11, 2009—which the fax imprint suggests was actually written in 2010 and misdated—Dr. Alexis Williams stated that Ms. Cunningham received treatment for fibromyalgia and chronic back pain at the Clinic Ole in Napa, California. AR 509. Dr. Williams reported that her ability to engage in regular employment was constrained by her medical conditions—in particular "frequent pain exacerbations that limit her mobility and her ability to complete regular tasks in a timely manner" and limited "ability to lift and to perform tasks that require repetitive movements." *Id.* Ms. Cunningham's chronic pain medication also causes her fatigue. *Id.* Lastly, Dr. Williams acknowledged that an MRI of Ms. Cunningham's spine "shows facet arthropathy at multiple levels as well as mild disc protrusions." *Id.*

Nurse Practitioner Lucretia Sonderer completed a form titled "Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment" on February 24, 2010. AR 578-83. She indicated that Ms. Cunningham could not perform light or sedentary work on a regular and continuing basis, even if she had the option to alternate sitting and standing during the workday. AR 578-79. When asked to consider Ms. Cunningham's capacity to perform certain activities in an 8-hour workday on a regular and continuing basis, FNP Sonderer stated that Ms. Cunningham could sit for less than one hour at a time, stand for less than one hour at a time, or walk for between one and two hours before needed to rest or alternate her position. AR 579. She would need to lie down for a total of about 6 hours during an 8-hour workday and sit, stand, or walk for a no more than an hour each. AR 580. FNP Sonderer reported Ms. Cunningham could lift or carry an item of less than 5 pounds for less than 2 hours total.

In each 8-hour work day on a continuing basis, Ms. Cunningham perform the activities of reaching, handling, and fingering no more than 30 minutes each and feeling for no more than 45 minutes. AR 581. Similarly, her capacity for stooping, kneeling, or crouching would be limited to 30 minutes each in an 8-hour workday. AR 582.

When asked to describe any limitations on the patient's cervical spine range of motion, FNP Sonderer wrote, "[patient] has right sided neck pain which hurts with turning head to the right and/or using right arm to lift/extend." *Id.* When prompted to indicate "based upon [her] evaluation[s], treatment and /or records reviewed, the earliest date from which the foregoing limitations have

existed at the assessed severity," FNP Sonderer listed May 2007. *Id.* (emphasis omitted). Finally, the form's "Comments" section asks the provider to describe the aspects of medical history, clinical findings, laboratory findings, diagnoses, and treatment prescribed, and prognosis, which in combination form the basis of his or her medical opinion. AR 583.

### B. Medical Evidence: Non-Treating Physicians

#### *1. Kathy Thomas, Ph.D (September 22, 2008)*

At the Commissioner's request, Kathy Thomas conducted a psychological evaluation of Ms. Cunningham on September 22, 2008. AR 383-86. Dr. Thomas diagnosed her with an adjustment disorder with depressed mood, and panic disorder. AR 385. In the summary section titled "Psychological/Psychiatric Medical Source Statement," she indicated that Ms. Cunningham had no observable impairment in (1) understanding or memory, (2) social interaction, or (3) adaptation, but as to the category of sustained concentration and persistence, a "[m]oderate impairment in ability to maintain adequate concentration on tasks over time." AR 386.

#### *2. Robert Quinones, D.O. (September 23, 2008)*

Consultive examiner Dr. Robert Quinones completed Ms. Cunningham's physical RFC assessment in September 2008. AR 389-93. He opined that she could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk about 6 hours in an 8-hour work day, and sit for about 6 hours in an 8-hour day. *Id.* The report states that Ms. Cunningham would be able to frequently balance and stoop, could occasionally kneel, crouch, crawl, or climb a ramp or stairs, and would not be able to climb a ladder, rope, or scaffolds. *Id.* Dr. Quinones indicated she had no manipulative limitations, no visual limitations, and no communicative limitations. The only environmental restriction was to avoid concentrated exposure to extreme cold and hazard.

Dr. Quinones summarized his assessment as follows: "I find [Ms. Cunningham] to be partially credible. In her ADL forms she described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. For example, she states that she takes care of her 2 children; takes care of pet; is able to do personal care; prepares simple meals; folds clothes; goes outside often; and drives a car." AR 393. At the time Dr. Quinones completed this RFC, there were apparently no treating or examining source statements in the file for

comparison.

### 3. *Heather Barrons, Psy. D (October 7, 2008)*

Consultive examiner Dr. Heather Barrons performed Ms. Cunningham's Mental RFC Assessment in October 2008. AR 396-399. The report concludes Ms. Cunningham is able to carry out simple and detailed instructions, follow simple work-like procedures, and make simple work-related decisions. *Id.* Dr. Barrons further noted that Ms. Cunningham appears to have an adequate ability to sustain attention for two hours at a time throughout an eight-hour workday and an adequate ability to perform at a consistent pace. *Id.* Dr. Barrons found Ms. Cunningham moderately limited in the ability to: (1) maintain attention and concentration for extended periods; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms; and (3) perform at a consistent pace without an unreasonable number and length of rest periods. *Id.*

The Psychiatric Review Technique Form Dr. Barrons completed reports that she has: (1) mild limitations on activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of an extended duration. AR 410. The evidence did not establish the presence of the Paragraph C criteria. *Id.*

### 4. *James Green (March 18, 2009)*

James Green prepared this case analysis as part of the Ms. Cunningham's request for reconsideration, which was denied on March 24, 2009. AR 16. Upon reviewing the records, he affirmed "the initial light RFC of 9/23/2008," because Dr. Wade's medical source statement of "1/09 for a near bedridden state does not correlate with objective findings, nor the claimant's own functional statements." *Id.*

**C. The ALJ's Findings**

Applying the sequential evaluative process as discussed below, the ALJ held on March 18, 2010 2011, that Ms. Cunningham was not disabled under §§ 216(i) and 223(d) of the Social Security Act and therefore not entitled to disability insurance benefits. AR 24. The ALJ also held that Ms. Cunningham was not disabled under § 1614(a)(3)(A) of the Social Security Act and not entitled to supplemental security income. *Id.*

At step one, the ALJ found that Ms. Cunningham had not engaged in substantial gainful activity since May 1, 2007, the alleged onset date. AR 18.

At step two, she found that Ms. Cunningham had several severe impairments, namely fibromyalgia, mild degenerative disk disease of the lumbar spine, obesity, and depressive disorder. *Id.*

At step three, the ALJ found that Ms. Cunningham did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments for listing 12.04. Concluding that Ms. Cunningham had a mild restriction in activities of daily living, mild difficulties in social function, and moderate difficulties with regard to concentration, persistence, or pace, the ALJ found that the paragraph B criteria of the listing were not satisfied. AR 19.

The ALJ then determined that Ms. Cunningham had the RFC to perform "light work," but only if she had the option to both sit and stand. In terms of non-exertional work, Ms. Cunningham was limited to simple repetitive tasks. *Id.* In making this finding, the ALJ first considered Ms. Cunningham's symptoms and how consistent they were with the objective medical evidence and other evidence. AR 20. The ALJ then determined whether there was an underlying medically-determinable physical or mental impairment that reasonably could be expected to produce Ms. Cunningham's pain and symptoms and then evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent that they limited her functioning. *Id.* If her statements about the intensity or functionally limiting effects of pain or other symptoms were not substantiated by objective medical evidence, the ALJ made findings on the credibility of the statements "based on a consideration of the entire case record." *Id.*

The ALJ summarized Ms. Cunningham's testimony that she left her office manager job in March 2007 to have a child, and did not return to work due to her back pain. *Id.* She acknowledged Ms. Cunningham's testimony about receiving pain management treatment in Sacramento, in Arizona, and from a pain group at Clinic Ole at the time of the hearing. *Id.* Ms. Cunningham took Prozac and Wellbutrin, but had never received treatment for emotional problems. *Id.* The ALJ acknowledged Ms. Cunningham's testimony that she takes medication when her pain is severe and uses a pillow to help relieve her sciatic pain. *Id.* She relaxes, watches television, takes her children to school and

picks them up, helps her husband cook and fold the laundry, and does some house cleaning on her good days. *Id.* As for her impairments, the ALJ noted that Ms. Cunningham "has pain throughout her body secondary to fibromyalgia" and "sleeps alone on a futon because the pain wakes her up at night." *Id.*

The ALJ concluded that although Ms. Cunningham's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* In particular, the ALJ found Ms. Cunningham's allegations regarding severe low back pain inconsistent with the radiology records "that all indicate relatively mild degenerative disk disease of the lumbar spine." *Id.* The ALJ also ALJ noted Ms. Cunningham's improved functioning as a result of treatment. *Id.* She referenced a record of pain management specialist Dr. Hunt from November 2007 regarding Mr. Cunningham's response to opioids, as well as a notation by Dr. Snook in January 2008 that "she is able to do activities of daily living, light work around the home, family interactions, take care of her five month-old child, personal hygiene needs, and unassisted movement outside the home." *Id.* The ALJ found consistent with these reports, notations that Ms. Cunningham brought her infant to a pain management appointment in April 2008 and both children to another appointment in May 2008. AR 20-21.

The ALJ concluded that Ms. Cunningham's daily activities, though limited, indicated that she had a greater capacity for work activity than she is willing to acknowledge. AR 21. In support of this finding, the ALJ considered that she is the principal caregiver of her two small children during her husband's work day, takes them to and from school every day, and does some simple housework and shops. *Id.* The daily activity questionnaires Ms. Cunningham completed in June 2008 and February 2009 acknowledged these activities in addition to using a computer, reading, speaking with friends on the phone, and walking short distances. *Id.*

The ALJ credited Ms. Cunningham's complaints only to the extent they were consistent with an RFC of simple repetitive tasks at a light exertion level. *Id.* The ALJ viewed Daren Cunningham's third-party statement about his wife's limitations as merely a reiteration of her less-than-credible

complaints. *Id.*

The ALJ acknowledged that the record reflects Ms. Cunningham's treatment for fibromyalgia over the course of several years at multiple pain management clinics. *Id.* Although she had also received treatment for lower back pain in this time frame, "[m]ultiple radiographic studies, most recently in November 2009, have all indicated relatively mild degenerative disk disease of the lumbar spine without disk herniation or significant stenosis." *Id.*

When explaining the basis of her RFC finding, the ALJ credited the September 2008 and March 2009 opinions of the Disability Determination Consultants "to the extent that [each] indicated the capacity or a range of simple repetitive work at the light exertional level with postural limitations generally consistent with those limitations." *Id.* In light of Ms. Cunningham's combination of severe impairments, however, the ALJ found the RFC required a sit-stand option for work. *Id.*

In contrast, the ALJ gave "little weight" to Dr. Wade's January 2009 report, in which he opined that chronic pain would prevent Ms. Cunningham from performing even a limited range of sedentary work. The ALJ cited several reasons for discounting Dr. Wade's opinion: (1) the ALJ was unsure if Dr. Wade was a "treating physician" under Social Security Ruling 96-2p; (2) Dr. Wade's examination records did not support such a restrictive RFC; (3) Dr. Wade's opinion was inconsistent with the rest of the medical record and Ms. Cunningham's activities of daily living; and (4) by giving an opinion unsupported by medical records, Dr. Wade appeared to be acting as an advocate for Ms. Cunningham rather than an objective medical practitioner. AR 21-22.

The ALJ also gave little weight to the February 2010 opinion of FNP Sonderer at Clinic Ole, which, like Dr. Wade's, indicated Ms. Cunningham was unable to perform even a limited range of sedentary work due to chronic pain. AR 22. The ALJ reasoned that (1) Sonderer was not an "acceptable medical source," (2) the extreme limitations indicated in her opinion were inconsistent with the rest of the medical record and Ms. Cunningham's activities of daily living; (3) her opinion was internally inconsistent; and (4) she purported to discuss the severity of Ms. Cunningham's impairments dating back to May 2007 even though Ms. Cunningham did not begin treatment at Clinic Ole until May 2009. *Id.*

At step four, the ALJ concurred with the VE's testimony that Ms. Cunningham was unable to

C 10-04313 LB
ORDER                              10

perform any of her past relevant work as an office coordinator/administrative assistant and office manager or as a dental assistant. *Id.*

At step five, the ALJ concluded that there are jobs existing in the national economy that Ms. Cunningham could perform given her RFC, age, education, and work experience. AR 23. Accounting for the extent to which Ms. Cunningham's additional limitations prevent her from performing the full range of light work, a hypothetical individual with her age, education, work experience, and RFC would be able to perform the requirements of representative unskilled light occupations such as electrical assembler (of which there are 180,000 jobs nationally and 2,400 in the Bay Area), and optical assembler (33,000 jobs nationally and 1,200 in the Bay Area). Based on this testimony, it was the ALJ's view that Ms. Cunningham was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy. AR 23. The ALJ thus concluded the sequential process by stating that Ms. Cunningham "has not been under a disability, as defined in the Social Security Act, from May 1, 2007, through the date of this decision." *Id.*

## ANALYSIS

Ms. Cunningham moves for summary judgment, arguing that the ALJ failed to consider her combined impairments and failed to include all of her limitations in the RFC. These errors, she contends, resulted from the ALJ's improper rejection of the medical opinions of Dr. Wade, Dr. Williams, Dr. Thomas, and FNP Sonderer, her own statements about her condition, and her husband's corroborating report. The Commissioner cross-moves for summary judgment and urges the court to find the ALJ's decision was supported by substantial evidence.

## I. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the plaintiff initiates the suit within 60 days of the decision. District courts may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." 42 U.S.C. § 405(g); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Andrew v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). If the evidence in the administrative record supports both the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *See id.*; *accord Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999).

## II. APPLICABLE LAW

### A. First Five Steps to Determine Disability

An SSI claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A) & (B). The Social Security regulations set out a five-step sequential process for determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520. The five steps are as follows:

**Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

If the Commissioner meets this burden, the claimant is not disabled.

For steps one through four, the burden of proof is on the claimant.  At step five, the burden shifts to the Commissioner.  *See Tackett*, 180 F.3d at 1098.

### B. The Relative Weight of Medical Opinions

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence.  20 C.F.R. § 416.927(b); *Zamora v. Astrue*, No. C 09-3273 JF, 2010 WL 3814179, at *3 (N.D. Cal. Sept. 27, 2010).  "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527).  "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).  "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) and *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  "If a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight.'" *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Social Security] Administration considers specified factors in determining the weight it will be given." *Id.* "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).  "Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of understanding a physician

has of the [Social Security] Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record." *Id.* (citing 20 C.F.R. § 404.1527(d)(3)-(6)). Nonetheless, even if the treating physician's opinion is not entitled to controlling weight, it still is entitled to deference. *See id.* at 632 (citing SSR 96-02p at 4 (Cum. Ed. 1996)). Indeed, "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-02p at 4 (Cum. Ed. 1996).

"Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(1)-(2)); *see also* 20 C.F.R. § 404.1527(d). Accordingly, "[i]n conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Id.* (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quotation omitted).[2] Opinions of non-examining doctors

---

[2] Although the type of reasons needed to reject either a treating or an examining physician's opinion is the same, the amount and quality of evidence in support of those reasons may be different. As the Ninth Circuit explained in *Lester*:

> Of course, the type of evidence and reasons that would justify rejection of an examining physician's opinion might not justify rejection of a treating physician's opinion. While our cases apply the same legal standard in determining whether the Commissioner properly rejected the opinion of examining and treating doctors-neither may be rejected without 'specific and legitimate' reasons supported by substantial evidence in the record, and the uncontradicted opinion of either may only be rejected for 'clear and convincing' reasons-we have also recognized that the opinions of treating physicians are entitled to greater deference than those of examining physicians. *Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(d). Thus, reasons that may be sufficient to justify the rejection of an examining physician's opinion would not necessarily be sufficient to reject a treating physician's opinion. Moreover, medical evidence that would warrant rejection of an examining physician's opinion might not be substantial enough to justify rejection of a treating physician's opinion.

alone cannot provide substantial evidence to justify rejecting either a treating or examining physician's opinion. *See Morgan*, 169 F.3d at 602. An ALJ may rely partially on the statements of non-examining doctors to the extent that independent evidence in the record supports those statements. *Id.* Moreover, the "weight afforded a non-examining physician's testimony depends 'on the degree to which they provide supporting explanations for their opinions.'" *See Ryan*, 528 F.3d at 1201 (quoting 20 C.F.R. § 404.1527(d)(3)).

### C. The ALJ Improperly Discounted Dr. Wade's RFC Assessment

The parties agree that Ms. Cunningham has fibromyalgia and that it is a severe impairment. *See* AR 18. The dispute concerns the extent to the fibromyalgia and other impairments limit Ms. Cunningham's RFC. The ALJ gave little weight to Dr. Wade's medical opinion of Ms. Cunningham's RFC, finding that his opinion was not supported by clinical findings, was inconsistent with the rest of medical record and with Ms. Cunningham's activities of daily living, and was "inordinately" based on her subjective complaints, which the ALJ did not find credible. AR 21-22.

Ms. Cunningham argues that the lack of objective evidence is not a valid reason to reject Dr. Wade's opinion in light of her fibromyalgia diagnosis. Pl.'s Mot. at 11. The court agrees. The ALJ erred by discrediting Dr. Wade's opinion on the basis of a lack of objective evidence regarding her pain. The Ninth Circuit has repeatedly recognized that "[f]ibromyalgia is a medical label that . . . cannot be objectively proved." *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 872 (9th Cir. 2004). In an analogous case concerning a claimant with fibromyalgia, the Ninth Circuit held that the ALJ erred by discounting the treating physician's opinions and thereby "effectively requiring objective evidence for a disease that eludes such measurement." *Benecke*, 379 F.3d at 594.

"The importance of the credibility of subjective complaint is underscored where, as here, the underlying condition is one that defies objective clinical findings." *Calkosz v. Colvin*, C-13-1624 EMC, 2014 WL 851911, at *5 (N.D. Cal. Feb. 28, 2014). To determine whether a claimant's

---

*Lester v. Chater*, 81 F.3d 821, 831 n.8 (9th Cir. 1995).

testimony about subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. *See Vasquez*, 572 F.3d at 591 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir.2007)). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that reasonably could be expected to produce the alleged pain or other symptoms. *See Lingenfelter*, 504 F.3d at 1036. Second, if the claimant meets the first test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so. *Id.*; SSR 96–7p.

The ALJ discredited Ms. Cunningham's subjective complaints by pointing to her ability to engage in some degree of daily activity. AR 21-22. But it is well established that "the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The record shows that Ms. Cunningham's husband performs the bulk of the daily household tasks. *See, e.g.*, AR 46-47, 51. On her good days she might make a simple meal, but in general, her husband does the cooking. AR 50. Similarly, he does most of the laundry, and she helps to fold it. AR 47. The ALJ's finding did not mention Ms. Cunningham's testimony that if she does more housework on days when she feels better, she then experiences more pain the following day. AR 46. She estimated that she spends three to four days in bed a week due to fatigue and pain. AR 51. In sum, the ALJ erred in relying on Ms. Cunningham's daily activities to both discredit her testimony and Dr. Wade's opinion. *See Benecke*, 379 F.3d at 594 (holding that ALJ erred in discrediting claimant's testimony about the severity of her symptoms based on her ability to carry out certain routine tasks where in fact her "daily activities are quite limited and carried out with difficulty").

Ms. Cunningham's husband completed a third party function report about how her illnesses, injuries, or conditions limit her activities. AR 209. Among other things, he stated that Ms. Cunningham wakes up in severe pain through the night, does not sleep well, and is very uncomfortable getting dressed in the morning. *Id.* Given that the ALJ erred in rejecting Ms. Cunningham's subjective complaints, the ALJ also erred in discrediting Daren Cunningham's third

party report as a mere reiteration of incredible statements.

### D. Remand for Payment of Benefits is Appropriate

When an "ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony," the court remands for a calculation of benefits. *Orn,* 495 F.3d at 640. A district court may remand to an ALJ with instructions to calculate and award benefits only if

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). The circumstances of this case fulfills each part of the credit-as-true standard. As the court has found, Dr. Wade's RFC should be accepted. There is no need to develop the record further because at the hearing before the ALJ, the VE testified that there would be no work available to Ms. Cunningham if she were absent three or more days a month as Dr. Wade opined. AR 56-57. Indeed, in the VE's opinion, even missing one or two days would not be feasible. The VE further stated that no labor market would exist for a person were limited to light or sedentary work; simple and repetitive tasks, and also needed two or three unscheduled breaks of 15 to 20 minutes each. *Id.* The court sees no benefit of additional administrative proceedings and will therefore remand for an award of benefits.

### CONCLUSION

For the foregoing reasons, the court **GRANTS** Ms. Cunningham's motion for summary judgment, **DENIES** the Commissioner's cross-motion, and **REMANDS** the case to the Social Security Administration for an award of benefits.

This disposes of ECF Nos. 11 and 12.

**IT IS SO ORDERED.**

Dated: September 30, 2014

_____
LAUREL BEELER
United States Magistrate Judge

C 10-04313 LB
ORDER            17